at all. Oral argument not to exceed 15 minutes per side. Ms. Meyer for the appellant. Morning, Your Honors. Morning. May it please the court. My name is Jennifer Meyer. I'm an assistant director of law for the City of Cleveland, and I represent the sole remaining defendant in this case, Sgt. Brian Kearney of the Cleveland Police Department. And I would like to reserve five minutes for rebuttal, please. You may, and you may proceed. Thank you, Your Honor. As unfortunate as the death of Decedent Kollin was, Sgt. Kearney did not violate Decedent Kollin's constitutional rights in any way. The appellee failed to provide competent, significant probative evidence that Sgt. Kearney was not entitled to qualified immunity, and instead manufactured their own incorrect timeline of events without any supporting evidence, and the district court erred when it denied summary judgment based on qualified immunity. First, I'd like to touch on the fact that the appellee claims that Sgt. Kearney acted with deliberate indifference to Decedent Kollin's serious medical need. There are three requirements for serious medical need. Sgt. Kearney must have been aware of facts in which the inference could be drawn that a substantial risk of serious harm existed, that he must have drawn that inference, and that he disregarded that risk. But right from appellee's own brief, he states that Sgt. Kearney made the assumption that Mr. Kollin was driving under the influence of alcohol, administered field sobriety tests, and arrested him. That's from page 15. So right there, the appellee admitted that Sgt. Kearney did not perceive any facts that he was suffering from a stroke, and that he decided to ignore the fact that he was suffering from a stroke and arrest him instead. One problem you've got is Kearney claims he arrested Kollin because Kollin smelled of alcohol. Yes, that is correct. In fact, we know that's totally false. Well, we know that he did not have any alcohol or drugs in his system from a blood test. He came from working at the Cleveland Browns Stadium. He was coming directly from the Cleveland Browns Stadium. He was only a few blocks. We haven't done discovery in this case because we filed motions for summary judgment based on qualified immunity. We don't know what his job at the Browns Stadium was. He could have smelled like alcohol, but Sgt. Kearney stated that he did smell alcohol. Right. The blood test at the hospital confirmed that he had no alcohol or drugs in his system. That's right. He had a stroke, right? That's right. I mean, nobody disputes now that what Mr. Kollin actually had was not intoxication. He had a stroke. That's correct. So why would your man say that he smelled of alcohol if, in fact, the facts seem to say, no, he couldn't have possibly smelled of alcohol? It is possible that he could have had beer on him from working at the Browns Stadium. I don't know exactly why, but Sgt. Kearney... You have no evidence of that in the record, do you? No, not at this juncture. But, I mean, it's not out of the realm of possibility. We're just trying to decide, though, is your man entitled to qualified immunity as a matter of law or whether there are disputed facts that require a jury. That's what we're up against here, aren't we? Yes, we are. But the thing is, is that the epile is trying to create this timeline saying that Sgt. Kearney disregarded certain things. Sgt. Kearney came to the scene. He was called to the scene by another officer that was waved down. So decedent Kollin had a rear-end car accident. The people on the scene thought he was intoxicated already. So Sgt. Kearney was called to the scene because he's ADAP certified. So he went to the scene, and he did the field sobriety test. What does ADAP mean? It's the... I can't remember offhand, but he's certified to administer the field sobriety test and the breathalyzer. So he goes to the scene, and he does the field sobriety test, and he does a nystagmus test, and he did, I believe, the one-footed... How long are you going to stand on one foot? Yes. And Mr. Kollin failed those tests. He was asked if he needed EMS on scene. He said no. He was able to walk on his own. He was able to walk on his own. He was able to talk to the officers and give them information. Let's assume that what happened at the scene is probably consistent with not a deliberate indifference. But then he gets to the police station. He's booked. What time does your man, Kearney, try to give him the breathalyzer test? 2115 hours, even though the ticket says 2015 hours. And that's because it was daylight savings time, and nobody changed the clock on the breathalyzer. But it would be... It's not even... 915. Yes. All right. The ambulance isn't called until a quarter to ten. Yes. Now, if the point he's trying to give him the breathalyzer test, he knows something's amiss here. I mean, the guy has not spoken a word. He's drooping on the left side, etc. So wouldn't it occur to him, hey, maybe this guy's not drunk, but maybe he has a stroke? Well, actually, it's not for certain that they were called right at 945 EMS. All we know from the evidence that's in the record is that Sergeant Kearney asked for the institutional guards to call 911, and then he called himself again to make sure that they were on their way because they were taking a little bit of time. That's in the record from the... Why was there the gap between 915 and a quarter to ten? I don't know if that's how long it took for EMS to actually arrive on scene or when they were actually called from the information in the record. And when you talk about information in the record, I assume that your argument relies on the estate's version of the facts because as I read your brief, it seems to me that Mr. Kearney says he relies on the estate's version of the facts, but then he starts articulating some of his versions of the facts, which are in conflict at various points with the estate's version. So I'm assuming that your argument today is premised on those facts that are argued by the estate. That's correct, except not on the ones that are beyond common sense. For example, the EPLI claims that the accident occurred at 20.02 hours. Let's just use 8.02. 8.02 hours. I just wrote it that way from the report. We're not all know. So 8.02 that the accident occurred. However, that's actually the time that the two officers received the call to arrive on the scene. So their timeline is all convoluted. They're trying to say, oh, well, Sergeant Kearney didn't have enough time to actually do these field sobriety tests. He must have lied about them because the accident happened at 8.02 and then he was arrested at 8.15. Well, that's not true. The accident happened before then because the officers who arrived on scene to transport Mr. Collin to the hospital were called at 8.02. So it happened beforehand. Well, those would be the courts talk about facts that are blatantly contradicted by the record, and I assume that those are the sort of facts you're referring to there. That's right. And I believe the biggest problem here is what the district court relied on was that hospital referral form. It's a handwritten form. And the police attached it to their response brief and said that they came up with a story out of nowhere that Sergeant Kearney must have called this Lieutenant Alcia, who is a jail lieutenant, not an employee of the Cleveland Police Department, and said, Mr. Collin has some sort of serious medical injury or harm, but I'm just going to ignore it. Because on this referral form, it's handwritten that EMS was called 2143, and I believe 8.02 or 8.15 he was in need of medical attention, something like that. So taking the plaintiff's version, the version of the facts that's true for purposes of this evaluation, why do you argue that your client is entitled to qualified immunity? He didn't violate Mr. Collin's rights at all. He wasn't? He did not violate Mr. Collin's rights at all. He did not see that Mr. Collin needed any medical attention until Mr. Collin said that his legs weren't working. That's what he told Sergeant Kearney after the breathalyzer. And at that point, the wheelchair was grabbed, and he instructed the institutional guards to call 911. So Mr. Kearney's legs were working? Mr. Collin? Yes, Mr. Collin. His legs were working then for purposes of doing the stand-on-one-leg test? Yes, yes. Well, he was walking at that time. He was just staggering according to the alcohol influence form. He fell over a little bit, staggered, but he was walking. He even walked under his own power from the police car up to CPU, the booking unit. So it wasn't until after the breathalyzer that, according to the deposition testimony, that he needed medical attention, that it was apparent that he needed medical attention. So if there isn't any more questions, I'm going to reserve the rest of my time. Thank you. Good morning, Your Honors. Good morning. Justin Gould on behalf of the estate of Mr. Collin. As you heard in appellant's argument, as within their brief, this is a case based on facts. And we're not here under jurisdiction of this court, as argued in our brief, because of that fact. 28 U.S.C. 1291 limits the appellate court's jurisdiction to only final decisions, and we address this in our brief. The denial of qualified immunity is only a final, appealable decision to the extent that it turns on issues of law. The defendant or the appellant must be prepared to overlook any factual dispute and to concede an interpretation of the facts in light most favorable to the plaintiff, and that's in Berryman v. Riger. As you can tell, based on the arguments of the appellant and their brief, that is simply not the case here. This whole case hinges on facts, hinges on one side's arguments of the facts and the other side's arguments of the facts, and we have a plethora of disagreement here. A lot of reasons why Mr. Collin's rights were violated, his constitutional rights were violated, there was a deliberate indifference to his medical needs. Well, if, in fact, the officer on the scene exhibited signs that were equally consistent with a drunk driver as to somebody who is in some other kind of distress, how do you prevail? And I know we're not talking about the ultimate outcome here, but we've got to consider, if we're looking at this scenario, we've got to consider that issue, as counsel opposite says. Of course. And the ultimate issue would be whether or not Mr. Collin needed that medical need, which is not disputed here. He did have a stroke. Now, we have the signs and symptoms that are relatively similar, but we have this crucial document in this case referenced as RE3110, page ID 477, which is the City of Cleveland referral of prisoner for hospital service form, the main document that the district court relied upon, or that Judge Solomon Oliver relied upon, on the trial court's decision, in that it is noted the form was filled out at 8-15, at the time of Mr. Collin's arrest, listing the badge number of Appellant Carney. Now, this document is very crucial in this case, in that one of the main components of a deliberate indifference to a medical need is, in fact, the subjective element, and whether or not that subjective element was met and Sergeant Carney, the defendant appellant, recognized that medical need. So I thought Ms. Meyer's argument was that, as to this particular document, it is blatantly wrong, I guess, in terms of time, that Sergeant or Officer Carney could not have executed this form at 8-15. It was apparently done at some later point, maybe at the police station or a booking desk or something along those lines, and there's no indication that Carney even signed this. It's signed by someone identified as Alicia. Yes, Your Honor, and in deposition testimony, we traced the custody of Mr. Collin. Sergeant Carney and Officer Thompson were the only two people that were in custody of Mr. Collin that entire time. Now, the badge number on the referral of prisoner for hospital service form is Mr. Carney's. We believe, and this is a disputed fact, that this information was relayed to Lieutenant Alacia, who filled out the form, by Mr. Carney. Now, what this form shows us is that this form was filled out at 8-15, the time of his arrest, but EMS did not arrive until 9-45, which is written on exactly the same form. Now, if the form was filled out at the time that EMS was called, why are the numbers different? Why does it say at the top of the form, EMS at approximately 21-43 or 9-43 p.m., but the form was filled out at 10-15 on that date? We believe that the officer knew at that time, at 8-15, at the time of his arrest, that there was a substantial need for medical care that was ignored. Your interpretation of this record is that at the time of arrest, at 8-15, Officer Carney called in this information, and it was then this form was written and signed by this Alicia at the booking station? Potentially, and we have some serious credibilities with Officer Carney. Now, with the arrest itself, there are certain sobriety tests that were discussed. There's a signature on that form that Officer Thompson witnessed those sobriety tests. Officer Carney, the appellant, testified that if he signed that form, that Officer Thompson signed that form, he was there to witness those tests. Officer Thompson testified in his deposition and was related in the brief that he was not there and that he did not witness the tests. The timing of the arrest is highly suspect. They're saying in their argument that the accident could not have happened at 20-02 or 8-02 p.m., but that is the time of the crash written on the crash report. All these numbers, all these times are taken from documents that the appellant provided, that the appellant filled out, and now they're arguing that these times are simply not the case to match their argument that there was not a deliberate indifference to a medical need. So your argument is that Officer Carney knew that Mr. Collin faced a substantial risk of harm as of 8-15 p.m.? Yes, Your Honor. And what is the evidence that supports that he knew in connection with this particular form? What is it because his badge number is on here? Yes, Your Honor. This form was filled out by someone who was not in the presence of Mr. Collin and never had custody of Mr. Collin, therefore they did not have the information in order to fill out the form. The only person that had the information was the appellant, Officer Carney. Someone would have to infer then that Officer Carney gave his badge number to Alicia who filled this out back at the station perhaps? Is that the theory? That is the disputed fact, Your Honor. And we believe that because we are arguing here disputed facts, the jurisdiction isn't even appropriate because we are on facts and not law, that this situation should be remanded for trial to Judge Solomon Oliver so that these issues can be adjudicated. You concede, I gather, it's not enough for you to show that Officer Carney or Sergeant Carney should have known that your man had a stroke. You have to actually show for a constitutional violation that he knew there was a serious need of medical attention and he was deliberately indifferent, right? Well, Your Honor, according to Farmer v. Brennan, we don't need to prove that the officer acted with the purpose to cause harm or that knowledge of harm would result. What we have to prove is that he had an inferred risk and drew an inference to a medical need. That he knew that Mr. Collin needed medical attention and ignored it. Yes, yes, acted with deliberate indifference towards it. And we have this through the facts of the arrest and through his detainment. We have Officer Corley who testified that immediately upon his arrival to the station he needed a wheelchair within the first five minutes. That is disputed by an appellant, Sergeant Carney, who says that this was more towards the 9-15 time when he needed the wheelchair. He arrived at the station at approximately 8-47. And Officer Corley, the booking agent who booked him immediately upon getting there, said that she turned around to do some paperwork and when she turned back Mr. Collin was unable to stand and being placed in a wheelchair. That also gives the inference that he was rolled into the blood and alcohol testing room where he could not provide any sample whatsoever, was not given a second chance, was not instructed to blow harder. It is a possibility that he was wheeled into the blood alcohol testing room in a wheelchair suffering from a stroke, the tube was placed in his mouth, and he could not blow through the tube because he was having this stroke. He did not smell of alcohol and that is clear, Your Honor, by the record which you stated earlier. Officer Thompson, who had Mr. Collin in custody for 30 minutes between 8-15 and 8-45 in his squad car after Mr. Carney did the so-called sobriety tests, Mr. Thompson stated that he never smelled alcohol whatsoever on Mr. Collin during any of those 30 minutes that he was in the squad car. He also stated that he was not hopping, swaying, or needing a balance as the appellant, Sergeant Carney, wrote on his alcohol detection form, which Mr. Thompson signed as a witness, which he did not. There are serious timeline problems here. There is enough evidence, enough factual issues, genuine issues of material fact that lead to a question for the jury. And once again, these are genuine issues of material fact that show us that this case should not be here based on a jurisdictional basis. We believe that what Judge Solomon Oliver did in the trial court and what he based his decision on is correct, that this referral of prisoner for hospital service form, the timing that's indicated on the form, leads to this genuine issue of material fact as to what time the appellant knew that Mr. Collin needed medical help. Even if we take their argument at its face, even if, as we don't have to as the appellee, take their facts as true, there's still a half-hour waiting period. If they say that this form was wrong because of daylight savings and this form was filled out at 21 or 915 instead of the 815 that appears on the form, there's still a half-hour in which EMS was not called. You're talking about the genuine issue of material fact, but we have to also determine whether or not, based on the evidence before us, that Officer Carney is entitled to qualified immunity, which is a separate question. The qualified immunity argument would be based on whether or not the objective component, whether or not Mr. Collin was deprived of a medical need while in custody. Because of the question of fact as to whether or not the subjective component is there, qualified immunity can't be established. Because we have this genuine issue of material fact as to whether or not he subjectively recognized the need for medical care, because that situation exists, qualified immunity can't be held in this situation. Because we have that genuine issue of material fact, this appeal shouldn't be here based on jurisdiction, and this case should go to trial. My understanding is Mr. Collin didn't die that evening in the hospital. It was two months later, right? Approximately 45 days later, Your Honor, he did. Forty-five days. I mean, I suppose there's a causation question here. I mean, not really directly before us, but, I mean, ultimately I guess there would have to be a decision. Your Honor, when someone suffers from a stroke, they have a very short window in order to be given what's called TPA IV therapy, what it is is a blood thinner that breaks the clot. Essentially, Mr. Collin was deprived of that time. He was held in custody for almost two hours. By the time he got to the hospital, the doctors did not have time to assess his condition and give him this drug that he needed to survive. We believe that the causation element is here, because when you suffer from a stroke, time is of the essence. He cannot be held needing this medical attention, because time is of the essence. He needs to get to the hospital the minute it is discovered that he needs medical care so this IV TPA therapy can be given. And we believe that that is the answer to the causation argument, in that because he was deprived of this medical need for this window of time, that we believe that the facts prove was there, that he was deprived of this ability for this therapy and deprived of the possibility of survival or survival. He did die approximately 45 days later after this, after it was too late to give him the therapy when he arrived, and it's noted in the medical records that he's already exceeded the window in which to be given that therapy. We believe that the facts here, there are so many issues of disputed facts. The fact that the appellant says he smelled of alcohol, yet the other officer testified he did not. The fact that the appellant said he needed support hopping and swaying, the other officer said he did not. We have the referral of prisoner for hospital service form, which is direct evidence of an acknowledgment of a medical need of at least a half hour before EMS was called at 945. We have the problems with the alcohol detection report, in which Mr. Thompson signed yet admitted in deposition that he did not witness any of these. We have the blood alcohol content testing done at 915 with an insufficient sample, with no second chance to blow and no offer of the sergeant, the appellant, an opportunity to blow harder. We also have the photographic evidence that you can see the side of his face drooping when he's in the wheelchair, which was given to him, according to Officer Corley, at approximately 845, an hour before EMS was called. We have all of these issues here that we believe establishes the subjective component, that Officer Carney knew that something was wrong. We don't have to prove that he knew he was having a stroke and an appellant's arguments are misplaced and that we don't expect him to be a doctor. He doesn't need to know exactly what's wrong. He just has to make the inference that there is a substantial harm that can occur if this person does not get medical care. Your theory is he ignored it. Yes, it is, Your Honor, and we believe that there are enough facts here in the evidence that we can prove it, especially as I started this argument, this case doesn't belong here because of jurisdictional problems. There are so many questions and genuine issues of material fact that it's not a legal appeal as stated in the law. They have to be here on the law, not the facts, and it has to be very, very narrow. The court's jurisdiction is very, very narrow. In addition to that, and I see my time is almost up, I'll leave with this, there is one aspect of the appeal that was not addressed by appellants, and those are the state law issues. We stated that a state actor acted with recklessness, malice, and wanton misconduct, which Judge Oliver said, and if you'll let me finish, I see my time is up, Judge Oliver said that that is also denied on summary judgment, that those state law claims must proceed. His decision on those state law claims was never appealed. So even if the court finds jurisdiction, even if the court finds that Sergeant Carney is entitled to qualified immunity, we believe the case still needs to be remanded because his decision on the state law claims was never appealed. Okay. Thank you, Mr. Gould. Thank you. Again, the appellee is taking liberties with the evidence that's in the record. I just heard counsel state that Officer Thompson stated that he did not see Mr. Collins sway, he did not see Mr. Collins stagger. That's not true. It's in his affidavit, and it's also in his deposition testimony that he did see Mr. Collins sway and stagger. So an appellee is taking great liberties with what's in the record and picking and choosing what he wants. I want to discuss this hospital referral form. Now, we filed for a motion for summary judgment based on qualified immunity, and the appellee did not respond for nine months. So for nine months, they could have gone and talked to Lieutenant Elsia. They could have gotten an affidavit from her to see if she actually wrote this. Who wrote this piece of paper? It is not properly in the evidence before us. We don't know who wrote it. We don't know what the reason was for. Again, to show that an appellee is creating their own genuine issue of material fact, the very first time in their opposition brief, they stated that Sergeant Carney called Lieutenant Elsia and gave her this information. They made this up. They don't have any phone records to substantiate that. They don't have any affidavits or deposition testimony to substantiate that. Then in their merit brief before this court, they say, Oh, no, Sergeant Carney actually wrote this piece of paper. I mean, it's in their merit brief. So they're creating their own genuine issues of material fact here because now they're saying Sergeant Carney wrote it, and they ignore the fact that in his deposition testimony, Sergeant Carney stated he has never seen this piece of paper before until that deposition. So he obviously couldn't have wrote it. But this referral form, we don't know why it was written, who wrote it, where they got the information from. Granted, Mr. Collin was in the possession of Sergeant Carney, then Officer Thompson and Officer Smallsmith, and then over to the booking window, and then there were many players. I mean, the appellees sued 12-some people in this case, claiming that all these individuals were involved at some point with Mr. Collin. So it's possible that somebody else gave this information to Lieutenant Elsia that wrote this piece of form. It's not properly before this court, and it shouldn't have been the reason why Sergeant Carney was denied qualified immunity. Also, I want to point out that an appellee's own document from the neurologist that treated Mr. Collin stated that he did not know whether Mr. Collin was drug intoxicated. So we're asking that Sergeant Carney would know more than a trained neurologist. I understand that counsel said we're not trying to say that he should know more than a trained neurologist, but he actually is. From their own document, it says that they did not know he was drug intoxicated until they ran the test. And from the evidence of swaying, staggering, he could have been drug intoxicated. Also, I want to touch briefly on Officer Thompson signing the breathalyzer form. The BAC form, the first part of the form has what the field sobriety tests were, and then the second half of the form is that a breathalyzer was conducted. And Officer Thompson stated on the record that he was present for the breathalyzer. And that also corresponds to the time that was on the breathalyzer ticket. The time on the ticket was 8.15, even though it really was 9.15, because, again, of the daylight savings time. So, appellee is trying to create all of these genuine issue material facts that don't exist. They're trying to ask this court to throw out common sense, also trying to deny Sergeant Kearney his right to qualified immunity based on this piece of paper that has no foundation and should be stricken from the record. And so we ask that you find that Sergeant Kearney should be granted qualified immunity in this matter. Thank you very much. Okay, thank you, counsel, for your arguments today. We very much appreciate them. The case will be submitted, and you may call the next case.